UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CARRIE BIGGIO, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                   **NO. 15-6034**

**H2O HAIR INC., ET AL.**                                    **SECTION "B"(2)**

**ORDER AND REASONS**

Before the Court are Defendants' "Motion for Summary Judgment Dismissing the FLSA Claims of Ashley Brown and Kayla Alvarez" (Rec. Doc. 90) and "Motion for Summary Judgment Dismissing the FLSA Claims and Gap Claims of Alison Kennedy" (Rec. Doc. 91). Plaintiffs timely filed opposition memoranda. Rec. Docs. 93-94. For the reasons discussed below,

**IT IS ORDERED** that the motion to dismiss the FLSA claims of Ashley Brown and Kayla Alvarez (Rec. Doc. 90) is **DENIED**.

**IT IS FURTHER ORDERED** that the motion to dismiss the FLSA and gap claims of Alison Kennedy (Rec. Doc. 91) is **DENIED**.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

As this Court has previously discussed, on November 18, 2015, Plaintiffs Carrie Biggio and Chelsea Luminais (collectively "Plaintiffs"), filed the present action under the Fair Labor Standards Act ("FLSA") against their former employer, asserting claims individually and on behalf of all those similarly situated. Rec. Doc. 1 at 1-2. Plaintiffs worked full-time at Defendant H2O Hair, Inc. ("H2O") under numerous job titles, including, but not

limited to: apprentice, stylist, masseuse, blow-dry bar attendant, receptionist, assistant, and housekeeper. *Id.* at 2. Named as Defendants in the action are H2O, Michael John Gaspard,[1] Holli M. Gaspard,[2] and XYZ Insurance Company.[3] *Id.; see also* Rec. Doc. 45 at ¶¶ 5-7. Plaintiffs asserted a number of claims against Defendants, including: (1) failure to pay minimum wage and overtime as mandated by the FLSA; (2) retaliation against Plaintiffs and those similarly situated who requested proper wages under the FLSA; (3) conversion and misappropriation; (4) unjust enrichment; and (5) failure to pay overdue wages following termination, as required by LA. REV. STAT. § 23:621 *et seq. Id.* at 3-6. Plaintiffs sought unpaid back wages, liquidated damages, punitive damages, costs, and attorney's fees, among other forms of relief applicable under Louisiana and federal law. *Id.* at 6-7.

Soon after filing the complaint, Plaintiffs filed a motion to conditionally certify the class. Rec. Doc. 27. On March 14, 2016, the motion was granted in part to allow conditional certification. Rec. Doc. 44 at 15. Consent forms from all potential opt-in plaintiffs had to be postmarked and deposited in the U.S. Mail on or before ninety days following the first mailing of the notice.

---

[1] Michael John Gaspard served, at all relevant times, as H2O's manager, secretary, and treasurer. Rec. Doc. 1 at 2.
[2] Holli Gaspard served, at all relevant times, as the president of H2O. Rec. Doc. 1 at 2.
[3] XYZ Insurance Company is, upon Plaintiffs' information and belief, the unnamed insurer providing coverage to Defendants for acts or omissions of officers and directors. Rec. Doc. 1 at 2.

*Id*. at 16. Based on these deadlines, and according to Plaintiffs, the opt-in period consequently ended on June 30, 2016. Rec. Doc. 74-1 at 1. Plaintiffs Ashley Brown and Kayla Alvarez opted-in to the class on April 27, 2016. Rec. Doc. 51. On November 2, 2016, this Court permitted Plaintiff Alison Kennedy to opt-in, even though her consent form was filed after the deadline had passed. Rec. Doc. 86.

## II.  THE PARTIES' CONTENTIONS

Defendants now seek to dismiss the FLSA and wage gap claims of Ashley Brown, Kayla Alvarez, and Alison Kennedy. Rec. Docs. 90-2 at 1; 91-2 at 1.

### A. MS. BROWN AND MS. ALVAREZ

Ms. Brown purportedly worked for H2O from August 15, 2015 to September 29, 2015, while Ms. Alvarez worked for H2O from March 18, 2015 to July 11, 2015. Rec. Doc. 90-4 at 3. Defendants claim that Ms. Brown and Ms. Alvarez were shampoo girls who were paid on an hourly basis at the federal minimum wage rate of $7.25 per hour. Rec. Doc. 90-2 at 1. Whenever they worked over forty hours during a week, Defendants assert that both women were paid overtime wages at the rate of $10.875 per hour. *Id.* Relying on the affidavit of Cherie Callaghan, H2O's office manager, and time card and compensation reports for both Ms. Brown and Ms. Alvarez (Rec. Docs. 90-4, 90-6 – 90-9), Defendants argue that both employees were paid everything that they were owed. Rec. Doc. 90-2 at 2.

3

With regard to Ms. Brown, Plaintiffs argue that the evidence relied on by Defendants in their motion for summary judgment effectively demonstrates violations of the FLSA. Rec. Doc. 94 at 3. Specifically, a time card report for Ms. Brown during the week of September 25, 2015 shows that she worked "33:17" (meaning 33 hours and 17 minutes, equal to 33.28 hours), but that her compensation report for the corresponding period shows that she was only paid for 32.28 hours. *Id.* (citing Rec. Docs. 90-6 at 8; 90-7). Plaintiffs also argue that Ms. Brown attended a meeting on September 3, 2015, but that her time card does not reflect the fact that she attended the meeting and subsequently "worked straight through until her shift ended that evening." *Id.* (citing Rec. Doc. 94-2 at ¶ 3; Rec. Doc. 90-6 at 4).[4] This resulted in a discrepancy of 2 hours and 26 minutes. *Id.* Finally, Ms. Brown insists that she worked on Monday, September 7, 2015, but that the records do not reflect, and that she was never paid for, this work. *Id.* at 4 (citing Rec. Doc. 94-2 at ¶ 4).

Further, Plaintiffs argue that Ms. Alvarez attended meetings during April, May, and July 2015, but she "did not clock in for most of these meetings for fear of getting into trouble." Rec. Doc. 94 at 4 (citing Rec. Doc. 94-4 at ¶ 4).[5] She also claims that she was asked to "run errands and deliver coffee" before her shift

---

[4] Rec. Doc. 94-2 is the affidavit of Ms. Brown.
[5] Rec. Doc. 94-4 is the declaration of Ms. Alvarez.

4

started (Rec. Doc. 94-4 at ¶ 5) and that she did not receive a paycheck "from the period April to May . . . ." (*id.* at ¶ 6).

### B. MS. KENNEDY

Ms. Kennedy purportedly worked for H2O from November 11, 2012 to January 20, 2015. Rec. Doc. 91-4 at 1. Defendants claim that she was a stylist compensated solely on a commission basis and that her compensation exceeded one and one-half times the federal minimum wage for each pay period. Rec. Doc. 91-2 at 1. Relying on a second affidavit from Ms. Callaghan, daily schedules for the period between December 21, 2012 and July 24, 2014, and a compensation report for Ms. Kennedy (Rec. Docs. 91-4 - 91-6), Defendants argue that Ms. Kennedy was paid everything that she was owed. Rec. Doc. 91-2 at 2.

Plaintiffs argue that Defendants have not proven that Ms. Kennedy is exempt from the requirements of the FLSA. Rec. Doc. 93 at 3. Specifically, Plaintiffs contend that Defendants admitted that they failed to maintain a copy of the agreement under which the exemption would apply, as required by the Code of Federal Regulations. *Id.* at 5 (citing Rec. Doc. 93-6).[6] Also, they failed to record the number of hours worked by Ms. Kennedy. Rec. Doc. 93 at 6-8. Because Defendants failed to maintain these records, Plaintiffs maintain that they cannot claim the exemption. *Id.* at

---

[6] Rec. Doc. 93-6 is an excerpt from the deposition testimony of Ms. Callaghan.

5

8. Finally, Plaintiffs note that Ms. Kennedy was compensated in the same way as Plaintiff Carrie Biggio and Defendants have already admitted that Ms. Biggio's payment scheme does "not fall within any exemption" to the FLSA. *Id.* (citing Rec. Doc. 14 at ¶ 16).

### III. LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

### A. MS. BROWN AND MS. ALVAREZ

Pursuant to federal law, employees are to be paid at least $7.25 per hour; for each hour worked in excess of forty hours per week, each employee is to be paid at a rate not less than one and one-half times the regular rate at which he or she is employed. 29 U.S.C. §§ 206(a)(1)(C); 207(a)(1).

Here, Defendants claim that Ms. Brown and Ms. Alvarez were paid $7.25 for each hour worked less than or equal to forty hours per week and $10.875 per hour for each hour worked in excess of forty hours per week. Rec. Doc. 90-2 at 2.[7] Based on these assertions and accompanying exhibits (including Ms. Callaghan's affidavit and the time card and compensation reports for both Ms. Brown and Ms. Alvarez), alone, Defendants argue that they are entitled to summary judgment.

---

[7] One and one-half times the federal minimum wage rate of $7.25 per hour is $10.875 per hour.

However, Plaintiffs have presented evidence to contradict Defendants' assertions. First, Plaintiffs argue that Defendants failed to pay Ms. Brown for approximately two and one-half hours of work on September 3, 2015, a full day of work on September 7, 2015, and an hour of work during the week of September 25, 2015. Rec. Doc. 94 at 3-4. Second, Plaintiffs have presented evidence that Ms. Alvarez was discouraged from clocking in to work, forced to work without clocking in, and was not paid for an entire pay period. *Id.* at 4; Rec. Doc. 94-4 at ¶¶ 4-6. When considering a motion for summary judgment "[a]ll facts and reasonable inferences must be construed in favor of the nonmovant, and the court must not weigh evidence or determine credibility." *Blank v. Bell*, 634 Fed. App'x 445, 446 (5th Cir. 2016) (citing *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009)). Because the parties have presented conflicting evidence, this Court cannot grant summary judgment dismissing the claims of Ms. Brown and Ms. Alvarez.

**B. MS. KENNEDY**

Despite the provisions recited above, no employer shall be deemed to have violated § 207(a), the FLSA's overtime provision,

> by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under [§ 206], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing

8

> commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i). Employees who satisfy these requirements are considered "exempt" from the FLSA. *See, e.g. In re Direct Southwest, Inc., Fair Labor Standards Act (FLSA) Litigation*, 08-1984, 2009 WL 2461716, at *2 (E.D. La. Aug. 7, 2009) (acknowledging that § 207(i) is referred to as the "retail service exemption"). To claim the exemption, the employer must therefore establish (1) the employees work in a retail or service establishment; (2) the employees are paid a regular rate of one and one-half times the federal minimum wage for each hour worked; and (3) the employees receive more than half of their compensation in the form of commissions. *See, e.g. Thomas v. Bob Mills Furniture Co., LLC*, 14-219, 2016 WL 1464636, at *2 (W.D. Tex. April 13, 2016) (citing *McAninch v. Monro Muffler Brake, Inc.*, 799 F. Supp. 2d 807, 810-11 (S.D. Ohio 2011); *Chariot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 449 (E.D.N.Y. 2015); 29 C.F.R. § 779.412). As to the second element, the "regular rate" is "determined by dividing the employer's total compensation during the workweek by the number of hours worked." *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1256 (11th Cir. 2001) (citing 29 C.F.R. § 779.419(b) (citing *Overnight Motor Co. v. Missel*, 316 U.S. 572 (1942))). Thus, for each employee exempted under this section, the employer "shall

9

maintain and preserve payroll and other records . . . ," including the hours worked each workday and total hours worked each workweek and

> [a] copy of the agreement or understanding under which [§ 207(i)] is utilized or, if such agreement or understanding is not in writing, a memorandum summarizing its terms including the basis of compensation, the applicable representative period and the date the agreement was entered into and how long it remains in effect. Such agreements or understandings, or summaries may be individually or collectively drawn up.

29 C.F.R. §§ 516.2(a)(7); 516.16(b). If an employer fails to keep these records, "and there is conflicting evidence regarding the number of hours worked per week, the number of hours 'is a genuine issue of material fact for the factfinder.'" *Forster v. Smartstream, Inc.*, 2016 WL 70605, at *5 (M.D. Fla. Jan. 6, 2016) (citing *Klinedinst*, 260 F.3d at 1257).

"The decision whether an employee is exempt under the [FLSA] is primarily a question of fact . . . ." *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 584 (5th Cir. 2006) (citing *Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992) (quoting *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1137 (5th Cir. 1988))). "However, '[t]he ultimate decision whether an employee is exempt from the FLSA's overtime compensation provisions is a question of law.'" *Id.* (quoting *Lott v. Howard Wilson Chrysler-Plymouth*, 203 F.3d 326, 331 (5th Cir. 2000) (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220 (5th Cir. 1990))). Essentially, though, FLSA exemptions are

construed narrowly "and the burden of proof lies with the employer." *Id.* (citing *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001)).

Defendants claim that Ms. Kennedy "was compensated on a commission basis only and that at all times her commissions exceeded 1 ½ times the minimum wage." Rec. Doc. 91-2 at 2. Plaintiffs respond by arguing that Defendants have not satisfied their burden of proving that Ms. Kennedy was exempt from the FLSA, because Defendants did not maintain the records required by 29 C.F.R. § 516.16(b), including a copy of the agreement as to how employees were to be paid and a record of hours worked. Rec. Doc. 93 at 3-6. Thus, Plaintiffs conclude that Defendants did not pay commissions under a "bona fide commission plan."

Neither the FLSA nor the Department of Labor's regulations define a "bona fide commission," but the regulations do provide that

> A commission rate <u>is not</u> bona fide if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek . . . [or if] the employee receives a regular payment constituting nearly his entire earnings which is expressed in terms of a percentage of the sales which the establishment . . . can always be expected to make with only a slight addition to his wages based upon a greatly reduced percentage applied to the sales above the expected quota.

29 C.F.R. § 779.416(c) (emphasis added). Here, the records provided by Defendants show that Ms. Kennedy was paid varying amounts each

11

pay period. Rec. Doc. 91-5 (e.g. on March 21, 2012 Ms. Kennedy was paid $1,143.27, but on April 18, 2012 she was paid $974.83). Nonetheless, <u>the exact formula used to calculate Ms. Kennedy's compensation was not provided to the Court</u>. Without this information, we cannot conclusively determine whether or not the compensation methodology used by Defendants constitutes a bona fide commission plan.

Furthermore, Plaintiffs note that Defendants failed to track the number of hours that Ms. Kennedy worked. Rec. Doc. 93 at 6-8. Even though Defendants provided the Court with Ms. Kennedy's client appointment schedule (Rec. Doc. 91-6), this schedule presumably does not account for canceled appointments, walk-ins, meetings, and other activities generally associated with Ms. Kennedy's work responsibilities. Without an accurate record of Ms. Kennedy's work hours, it is impossible to calculate whether or not her compensation amounted to more than one and one-half times the federal minimum wage for each hour worked, as required by § 207(i). *See, e.g. Klinedinst*, 260 F.3d at 1256 (exempt employees are paid a regular rate of one and one-half times the federal minimum wage for each hour worked and the regular rate is "determined by dividing the employer's total compensation during the workweek <u>by the number of hours worked</u>") (emphasis added). Ms. Callaghan's uncorroborated and conclusory allegation that Ms. Kennedy's compensation exceeded the requisite amount is not sufficient to

warrant summary judgment in favor of Defendants. *See* Rec. Doc. 91-4 at 1; *Galindo v. Precision Am. Corp.*, 754 F.2d 1212 (5th Cir. 1985) ("We have long recognized that mere statements of conclusions of law or ultimate fact cannot shift the summary judgment burden to the nonmovant"); *Bridges v. Internal Revenue Serv.*, 433 F.2d 299, 300 (5th Cir. 1970) ("Defendant officers may not rely, of course, on bare conclusory allegations on this issue, for this will not sustain a summary judgment in their favor"); *Tapps Brewing Inc. v. City of Sumner*, 482 F. Supp. 2d 1218, 1225 (W.D. Wash. 2007) ("Conclusory, non-specific statements in affidavits are not sufficient, and missing facts will not be presumed"); *Monroe v. Bd. of Educ. Of Town of Wolcott, Conn.*, 65 F.R.D. 641, 650 (D. Conn. 1975) ("Perhaps because the testimony of affiants, who are not subject to cross-examination, is inherently less reliable than that of witnesses in open court, courts have been stricter, holding that conclusory statements of opinion in affidavits are entitled to no weight in the court's deliberative process").

Defendants' two-page memoranda, devoid of any supporting case law, failed to convince this Court that Defendants were entitled to judgment as a matter of law. *See, e.g. Forster*, 2016 WL 70605, at *7 (where the court denied summary judgment, because the defendant made "no arguments in his motion but instead . . . cites declarations and materials produced in discovery as containing the material undisputed facts, attached as exhibits to his motion,"

13

thereby leaving "the Court to discern potential bases for summary judgment"). FLSA exemptions are construed narrowly "and the burden of proof lies with the employer." *Cheatham*, 465 F.3d at 584 (citing *Vela*, 276 F.3d at 666). At this stage, Defendants have failed to satisfy that burden.

New Orleans, Louisiana, this 16th day of December, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE