## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

CARRIE BIGGIO, ET AL.                          CIVIL ACTION

VERSUS                                         NO. 15-6034

H2O HAIR INC., ET AL.                          SECTION "B"(2)

### ORDER AND REASONS

Before the Court is "Plaintiffs' Motion for Partial Summary Judgment." Rec. Doc. 146. Defendants timely filed an opposition memorandum. Rec. Doc. 157. Plaintiffs then requested (Rec. Doc. 161), and were granted (Rec. Doc. 168), leave to file a reply memorandum (Rec. Doc. 169). For the reasons discussed below,

**IT IS ORDERED** that Plaintiffs' motion for partial summary judgment (Rec. Doc. 146) is **DENIED**.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As this Court has previously discussed, on November 18, 2015, Plaintiffs Carrie Biggio and Chelsea Luminais (collectively "Plaintiffs"), filed the present action under the Fair Labor Standards Act ("FLSA") against their former employer, asserting claims individually and on behalf of all those similarly situated. Rec. Doc. 1 at 1-2. Plaintiffs worked full-time at Defendant H2O Hair, Inc. ("H2O") under numerous job titles, including, but not limited to: apprentice, stylist, masseuse, blow-dry bar attendant, receptionist, assistant, and housekeeper. *Id.* at 2. Named as Defendants in the action are H2O, Michael John Gaspard

1

("Mr. Gaspard"),[1] Holli M. Gaspard ("Ms. Gaspard"),[2] and XYZ Insurance Company.[3] *Id.; see also* Rec. Doc. 45 at ¶¶ 5-7. Plaintiffs asserted a number of claims against Defendants, including: (1) failure to pay minimum wage and overtime as mandated by the FLSA; (2) retaliation against Plaintiffs and those similarly situated who requested proper wages under the FLSA; (3) conversion and misappropriation; (4) unjust enrichment; and (5) failure to pay overdue wages following termination, as required by Louisiana law. Rec. Doc. 1 at 3-6. Plaintiffs sought unpaid back wages, liquidated damages, punitive damages, costs, and attorney's fees, among other forms of relief applicable under Louisiana and federal law. *Id.* at 6-7.

Soon after filing the complaint, Plaintiffs filed a motion to conditionally certify the class. Rec. Doc. 27. On March 14, 2016, the motion was granted in part to allow conditional certification. Rec. Doc. 44 at 15. The class now consists of thirteen former employees. Rec. Doc. 146-1 at 1.[4]

---

[1] Mr. Gaspard served, at all relevant times, as H2O's manager, secretary, and treasurer. Rec. Doc. 1 at 2.

[2] Ms. Gaspard served, at all relevant times, as H2O's president. Rec. Doc. 1 at 2.

[3] XYZ Insurance Company is, upon Plaintiffs' information and belief, the unnamed insurer providing coverage to Defendants for acts or omissions of officers and directors. Rec. Doc. 1 at 2.

[4] Plaintiffs include Biggio, Luminais, Kaitlin Dubroca, Erin Hawkins, Amanda Henderson, Jeanette Kent, Heather Pham, Loan Tran, Diana Macera, Heather Whittington, Kayla Alvarez, Ashley Brown, and Alison Kennedy.

## II. __THE PARTIES' CONTENTIONS__

Plaintiffs argue that Defendants (1) violated Sections 6 and 7 of the FLSA by ordering Plaintiffs to work off the clock; (2) circumvented the FLSA by paying only commissions and/or arbitrarily withholding commissions; (3) failed to create and maintain records required by the FLSA; and (4) willfully violated the FLSA. Rec. Doc. 146-1 at 11, 15, 18.

Defendants' response memorandum focuses only on whether or not Plaintiffs established that Defendants *willfully* violated the FLSA. Rec. Doc. 157.[5] However, Defendants also attached an affidavit by Cherie Callaghan, H2O's office manager, that addresses several of the factual allegations made by Plaintiffs.

---

[5] Defendants also argue in their response memorandum that "Plaintiffs try to resurrect their training agreement claims through this motion. However, this court dismissed them. Anyway, the training agreement gripes are immaterial to determining whether H2O engaged in willful FLSA violations for purposes of applying the limitations periods of 29 U.S.C. § 255(a); because those limitations periods apply only to claims for 'unpaid minimum wages, unpaid overtime compensation, or liquidated damages.'" Rec. Doc. 157 at 4. In their first amended complaint, Plaintiffs asserted "claims under the Louisiana Unfair Trade Practices Act ('LUTPA') related to Training Contracts and Non-Compete Agreements entered into by the parties . . . ." *See* Rec. Doc. 54 at 1. By motion, Defendants argued that the Court should dismiss Plaintiffs' LUTPA claims for lack of subject matter jurisdiction, because Plaintiffs did not allege an "ascertainable loss of money or property," and because Plaintiffs lacked standing. *Id.* at 3. The Court dismissed the LUTPA claims based on the last argument: Louisiana Revised Statute § 51:1409(A) specifically prohibits bringing such an action in a representative capacity. *Id.* at 5. Defendants are therefore correct that, to the extent the training agreement claim is reasserted by Plaintiffs under the LUTPA, this Court has already dismissed that claim. However, the first amended complaint discussed the training contract and related issues in its factual background section and incorporated that section into each of its counts. Therefore, the Court will consider the training agreement to the extent it is relevant to Plaintiffs' remaining claims.

Rec. Doc. 157-2. Therefore, the Court will consider the affidavit as part of Defendants' response to Plaintiffs' motion.[6]

### III. <u>LAW AND ANALYSIS</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[6] In their reply memorandum, Plaintiffs argue that "[t]he Fifth Circuit does not allow a party to defeat summary judgment by using an affidavit that impeaches sworn testimony." Rec. Doc. 169 at 5 (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony") (citations omitted); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) (same) (citations omitted); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (same) (citations omitted)). However, it does not appear to the Court that Ms. Callaghan's affidavit directly contradicts her deposition testimony. For example, Ms. Callaghan states in her affidavit that H2O employees did not clock in for the "Friends and Family Day" event because they were to be paid through commissions only. Rec. Doc. 157-2 at 5-6. Plaintiffs argue that this statement is directly contradicted by her deposition testimony. Rec. Doc. 169 at 3 (citing Rec. Doc. 146-5 at 8). However, the cited testimony reveals only that Ms. Callaghan stated that the plaintiffs were not allowed to clock in on some unknown promotional day. If all parties agree that Plaintiffs were only to be paid commissions on those days, these statements are not inconsistent. Plus, Plaintiffs sometimes misconstrue Ms. Callaghan's affidavit statements. For example, they argue that Ms. Callaghan stated that "some of the plaintiffs attended training sessions on Mondays and staff meetings on Fridays, during regular work hours, but all clocked-in and were paid minimum wage." Rec. Doc. 169 at 2. However, Ms. Callaghan actually stated that (1) those who attended the voluntary Monday meetings were not required to attend off the clock and were paid the federal minimum wage and (2) hourly wage and mixed commission/hourly wage employees who attended Friday meetings clocked in for those meetings, but commission-only employees did not clock in for those meetings and some employees were not required to attend those meetings. Rec. Doc. 157-2 at 4. Plaintiffs argue that these statements are contradicted by Ms. Callaghan's deposition testimony "that there are times where compensable hours are simply not recorded, such as meetings, walk-in clients, setting up a work station, etc." Rec. Doc. 169 at 2. However, Ms. Callaghan actually testified in her deposition that stylists do not clock in for Friday meetings. Rec. Doc. 146-5 at 11. This is consistent with her affidavit recognizing that those who were paid on a commission-only basis do not clock in for those meetings. Ms. Callaghan also stated that stylists may take clients who are not on the daily schedules if, for example, their mother wants to come in after hours, but that she did not think this happened often. *Id.* She also stated that stylists are nevertheless supposed to put all of their clients on the daily schedules. *Id.*

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

## A. DID DEFENDANTS VIOLATE THE FLSA BY REQUIRING PLAINTIFFS TO WORK OFF THE CLOCK?

Section 6 of the FLSA requires certain employers to pay minimum hourly wages to their employees. 29 U.S.C. § 206(a)(1). Section 7 requires these employers to pay non-exempt employees who work more than forty hours during a workweek one and one-half times their regular rate of pay. 19 U.S.C. § 207(a)(1). The Portal to Portal Act, which amended the FLSA, provides that an employer is not liable for failing to pay minimum or overtime wages "on account of . . . activities which are preliminary or postliminary to" the "principal activity or activities" for which the employee is "employed to perform" which occur prior or subsequent to the time at which the employee commences or ceases such principal activity or activities. 29 U.S.C. § 254(a); *see also Griffin v. S & B Eng'rs & Constructors, Ltd.*, 507 F. App'x 377, 380-81 (5th Cir. 2013); 29 C.F.R. § 790.8(a). "The legislative history further indicates that Congress intended the words 'principal activities' to be construed liberally . . . to include any work of consequence performed for an employer, no matter when the work is performed." § 790.8(a). Further, "[t]he Supreme Court has held that any activity that is 'integral and indispensable' to a compensable 'principal activity' is itself a compensable 'principal activity' . . . ." *Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 409 (5th Cir. 2011) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005); *Steiner v. Mitchell*,

6

350 U.S. 247, 252-53 (1956)). Thus, the Fifth Circuit previously explained that

> the excepting language . . . was intended to exclude from F.L.S.A. coverage only those activities predominantly . . . spent in (the employees') own interests. No benefit may inure to the company. The activities must be undertaken for (the employees') own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer. The exemption was not intended to relieve employers from liability for any work of consequence performed for an employer, from which the company derives significant benefit. Nor was the exemption to apply to work performed . . . before or after the regular . . . work shift . . . (as) an integral and indispensable part of the principal activities for which covered workmen are employed.

*Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398-99 (5th Cir. 1976) (quotation marks and quotations omitted).

Further, training and similar activities are not considered working time if

> (a) Attendance is outside of the employee's regular working hours;
> (b) Attendance is in fact voluntary;
> (c) The course, lecture, or meeting is not directly related to the employee's job; and
> (d) The employee does not perform any productive work during such attendance.

29 C.F.R. § 785.27; *see also* 29 C.F.R. §§ 785.28-785.29. Thus, "[j]ob-related training activities are generally compensable under [the] FLSA . . . ." *Moreau v. Klevenhagen*, 956 F.2d 516, 521 (5th Cir. 1992), *aff'd,* 508 U.S. 22 (1993) (emphasis added) (citing § 785.27).

Plaintiffs argue that Defendants violated Sections 6 and 7 in several ways.[7]

First, they argue that Defendants required Plaintiffs to work off the clock during mandatory training sessions. Rec. Doc. 146-1 at 12. Plaintiffs explain that they were forced to sign "Training Contracts," "which provided that H2O would employ Plaintiffs as part of an 'apprenticeship' program . . . ." Rec. Doc. 146-1 at 4. As part of the training program, Plaintiffs were allegedly required to attend weekly training sessions during business hours, without clocking in, and write book reports on personal time "on books wholly unrelated to hair styling." *Id.* at 5 (citations omitted). To support these allegation, Plaintiffs cite to various documents in the record, including affidavits, the deposition testimony of Mr. Gaspard and Ms. Callaghan, and what appears to be a book report assignment.

Specifically, Mr. Gaspard testified that the training program "gives them more opportunity to touch more heads and build their clientele" and, when asked "that – in building the clientele, it benefits them and the salon at the same time . . . [i]t's a mutual

[7] The Court spent a significant amount of time consolidating and organizing Plaintiffs' arguments and supporting documentation. In fact, Plaintiffs repeatedly cited to deposition testimony that was not included in the record until after Defendants filed their response memorandum and attached the full transcripts for Mr. and Ms. Gaspard, Ms. Callaghan, and Ms. Phillips. The Court attempted to find the best evidence to support Plaintiffs' allegations, which often exaggerated and misconstrued deposition testimony. If, during the process, the Court inadvertently overlooked better evidence, Plaintiffs will have an opportunity to present it at trial.

exchange," he answers "Absolutely . . . yes." Rec. Doc. 146-11 at 3. He also testified that "we are known for being able to help you build the clientele . . . but you can't keep them if you don't have the skills. That's why we train." *Id.* at 4.

Mr. Gaspard's testimony suggests that the training benefitted H2O and therefore was not intended to be activity excluded by the Portal to Portal Act. Thus, we must next consider whether or not Plaintiffs were compensated for this time.

Shazia Wahaj, H2O's assistant manager from 2014 to 2016, testified that most of the plaintiffs were required to attend Monday classes that lasted approximately three hours, but that it was "her understanding" they were not allowed to clock in during those classes. Rec. Doc. 146-6 at 1, ¶ 7.

Ms. Wahaj's testimony is insufficient at this stage. Even though it might have been "her understanding" that Plaintiffs were not "allowed" to clock in, there is no evidence that Plaintiffs did not regularly clock in during these sessions. Of course, some Plaintiffs submitted declarations stating that they were required to attend classes without pay. *See, e.g.,* Rec. Doc. 146-14 at 2, ¶ 7; 7, ¶ 8; 23, ¶ 9. However, it is not clear whether or not these Plaintiffs were paid hourly or by commission on the unknown dates of these meetings; the declarations include the same standard language that these Plaintiffs were employed as hourly employees, but, the Court knows from Ms. Callaghan's deposition and affidavit

that employees originally hired on an hourly basis often became commission employees. Plus, Ms. Callaghan specifically stated that Plaintiffs were paid an hourly wage for their attendance at Monday training sessions. Rec. Doc. 157-2 at 6. Thus, there is a genuine issue of material fact and therefore insufficient evidence to find, as a matter of law, that Defendants required Plaintiffs to attend training sessions without pay.

Plaintiffs also allege that they were required to complete training assignments, including book reports. When asked how Plaintiffs would record their hours for this work, Ms. Callaghan responded "They could have been reading. I don't know." Rec. Doc. 146-5 at 17. Plaintiffs' counsel then asked "Is there a system by which you keep track of the hours that they . . . spend doing this work?" *Id.* Ms. Callaghan answered "There is no system." *Id.* When Plaintiffs' counsel responded "So if there is no recorded hours for . . . anyone . . . regarding work like this; they were not paid for that; is that right," Ms. Callaghan stated "Not that I'm aware of." *Id.* Plus, a document in the record titled "How to Win Friends and Influence People" contains various questions or prompts, responses to which were to be "turn[ed] in during class on January the 27th." Rec. Doc. 146-7. The questions include "What spoke to you the greatest in reading this book," "Give 5 facts that you read in the book about what people want most from others," "What did you learn from the book that will help you with your

skills in interaction with your guest," and "Did you read the book in its entirety <u>as required</u>?" *Id.* (emphasis added). Only one Plaintiff addressed these book reports in her declaration. Plaintiff Whittington stated that she was required to "write reports about . . . books that did not pertain to the trade of dressing hair [and] was threatened to be let go if book reports were not completed in addition to being sued . . . ." Rec. Doc. 146-14 at 22, ¶ 7.

It is unclear whether or not any time spent on book reports would be excluded under 29 C.F.R. § 785.27. Plaintiffs specifically state that these reports must be completed on personal time and that the assigned books were not directly related to the job, both suggesting that the time may be excluded. While Plaintiffs attached a document suggesting that the reading was required, the document is provided to the Court without any context. It could simply mean that those employees who volunteered to participate in the reading were required to read the book in its entirety in the same way that a responsible book club attendee would be required to complete the assigned reading. It is also unclear which Plaintiffs were purportedly required to read the book and how much time these Plaintiffs spent reading the book. Therefore, Plaintiffs are not entitled to a summary judgment finding that Defendants required Plaintiffs to complete work-related reading off the clock in violation of Sections 6 and 7 of the FLSA.

Second, Plaintiffs argue that they were required to work off the clock on certain promotional days. Rec. Doc. 146-1 at 12. In support, Plaintiffs cite to a screenshot of a 2014 text message in which Laura Phillips, H2O's general manager, states "Cherie ask that I remind the group about PDF&F. You should be clocked out and receiving commission only." Rec. Doc. 146-4 at 1. In her deposition, Ms. Callaghan testified that clients brought in on promotional days would pay for their services but that the plaintiffs would not be allowed to clock in "if they brought people in to do." Rec. Doc. 146-5 at 8. Finally, in a screenshot of a September 15, 2014 text message, Ms. Wahaj states "Hey girls! Cherie is asking that in order to make payroll easier you guys DO NOT clock in on your family and friends day!" Rec. Doc. 146-6 at 2.

However, in the affidavit attached to Defendants' response, Ms. Callaghan stated that certain Plaintiffs voluntarily participated in promotional days and that those who participated were compensated on a commission-only basis. Rec. Doc. 157-2 at 5-6.[8] This statement is corroborated by the portion of Ms. Phillips' deposition testimony cited by Plaintiffs. When Plaintiffs' counsel asked "So some days these employees are restricted from clocking

---

[8] She also stated that "Erin Smith worked on friends and family who did not pay for services, so she did not receive a commission." Rec. Doc. 157-2 at 6. "Erin Smith" is not a party to this action. It is unclear if Ms. Callaghan intended to refer to Plaintiff Erin "Hawkins."

in and others they do clock in; is that right," Ms. Phillips responded "Not restricted. They're paid hourly versus paid – they're paid commission versus hourly." Rec. Doc. 146-8 at 6. Plaintiffs' counsel asked "So are they given the option to clock in and get their commission?" *Id.* Ms. Phillips responded "I don't believe so. But no, I don't know the answer to that. If I ask someone to work and they're not on the clock and not earning commission, I say, hey, clock in and help me . . . Normally when an employee – when they have moved up to the level of commission they are looking to get rid of that hourly wage and grow as a commissioned employee." *Id.*

Thus, there is a genuine issue of material fact as to whether or not Plaintiffs were properly compensated, through commissions, on promotional days.

Third, Plaintiffs argue that they were required to work off the clock during mandatory Friday and Sunday meetings. Rec. Doc. 146-1 at 12. Plaintiff Alvarez stated in her declaration that she "attended all 7:00 AM meetings as required . . . [but] did not clock in for most of these because [she] did not want to get into trouble." Rec. Doc. 146-14 at 1, ¶ 4. The declarations of some of the remaining Plaintiffs, which all use substantially similar language, also suggest that Plaintiffs were required to attend meetings without clocking in. *See id.* at 7, ¶ 8; 12, ¶ 7; 14, ¶ 7; 20, ¶ 7; 23, ¶ 9.

In her affidavit, Ms. Callaghan testified that hourly wage
and mixed commission/hourly wage employees clocked in for Friday
meetings. Rec. Doc. 157-2 at 4. Further, while Ms. Wahaj testified
that Plaintiffs were required to attend such meetings (*see* Rec.
Doc. 146-6 at 1, ¶ 8), she did not state that Plaintiffs were not
allowed to clock in. Similarly, in a December 29, 2014
communication, Mr. Gaspard stated that the company will be meeting
on Sunday, January 4, 2015 from 10:00 a.m. to 2:00 p.m. and that
"[f]or all those who wish to participate in receiving new guests
and advancement in their own personal growth and financial progress
with H2O Salon & Spa, we require your attendance." Rec. Doc. 146-
10 at 3. Again, though, Mr. Gaspard did not state that Plaintiffs
were not allowed to clock in during this meeting. Ms. Callaghan
also stated that Plaintiffs Kennedy and Biggio did not clock in
for the Friday staff meetings, because they worked on a commission-
only basis, and that Plaintiffs Alvarez and Brown were not expected
to attend these meetings. *Id.* Nonetheless, Ms. Callaghan admitted
that certain Plaintiffs attended three Sunday events for which
they were not compensated. Rec. Doc. 157-2 at 4-5.

Ultimately, without additional information regarding their
commission salary, it is unclear whether or not commissioned
employees were properly compensated for attending meetings. It is
also unclear which Plaintiffs attended which meetings, for how
long, without clocking in. Plus, Plaintiffs completely fail to

address the distinction between hourly and commission employees. Without better evidence, the Court cannot hold, as a matter of law, that Defendants violated the FLSA by failing to properly compensate employees for attendance at certain meetings.

The factual record is simply too convoluted and contradictory for this Court to hold that Plaintiffs are entitled to a broad summary judgment finding that Defendants violated various sections of the FLSA by requiring Plaintiffs to work off the clock. For judgment as a matter of law, the Court would need far more specific details as to each Plaintiff, her hours, her pay, the basis for her compensation, and her participation in various meetings and activities.

## B. DID DEFENDANTS PAY ONLY COMMISSIONS AND/OR ARBITRARILY WITHHOLD COMMISSIONS?

The FLSA provides that an employer does not violate the overtime provisions of Section 7

> by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek . . . if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him . . . and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

§ 207(i). If an employee is exempt under this section, the employer "shall maintain . . . [a] copy of the agreement . . . under which section 7(i) is utilized or, if such agreement is not in writing, a memorandum summarizing its terms including the basis of compensation, the applicable representative period and the date the agreement was entered into and how long it remains in effect." 29 C.F.R. § 516.16(b).

Plaintiffs argue that there is no evidence of an agreement or "bona fide commission rate," which is "required to determine commissions" and "an absolute requirement when claiming 207(i) exemptions." Rec. Doc. 146-1 at 16. They use Plaintiff Tran as an example of Defendants' alleged misconduct. She apparently earned a commission of $67.01 during the week of November 28, 2013 (*see* Rec. Doc. 146-21), but she was never paid a commission during that time period (*see* Rec. Doc. 146-22 at 4). In fact, Plaintiffs allege that she was entitled to $1,999.29 in commissions, but was only ever paid $111.06 in commissions. Rec. Doc. 146-1 at 18 (citing Rec. Doc. 146-22 at 8 (showing only that Tran was paid $111.06 in commissions)).[9]

Plaintiffs also argue that Defendants would reduce Plaintiffs' wages for failing to meet retail sales goals because "it keeps them focused." Rec. Doc. 146-1 at 3. Mr. Gaspard

---

[9] The source of the $1,999.29 figure remains unknown to the Court.

testified that if an employee failed to meet a certain standard, she was penalized: "So if they did a dollar . . . of service and they only sold five cents . . . they didn't meet the . . . ten percent in product sold, then they, instead of getting 20 percent commission, it would be reduced to 15 percent in commission." Rec. Doc. 146-11 at 6. Plaintiffs' counsel then asked, "So, essentially, there'd be a reduction in wages if there was not enough retail product sold?" *Id.* Mr. Gaspard responded "Because we call it an indicator. It indicates that they're not having conversation with the client about home care and using the product that we use to get the same results . . . So it keeps them focused. That's the purpose of it." *Id.*

In her affidavit, Ms. Callaghan acknowledges that "H2O did not have any written agreements with any of the Plaintiffs." Rec. Doc. 157-2 at 6. However, she explains that each employee was given a "daily Employee On Task Report that provided daily revenue information from their respective sales and services that could be used to verify their respective earned commissions." *Id.* H2O also "had available a memorandum that provided guidelines concerning how to determine earned commissions." *Id.*

If Plaintiffs are asking the Court to find, at the summary judgment stage, that Defendants "arbitrarily withheld commissions," they should have produced better evidence. Ms. Callaghan testified to the existence of a memorandum outlining

Defendants' process for calculating commissions. If Plaintiffs agreed to an arrangement in which Defendants would deduct commissions for an employee's failure to meet certain sales goals, Plaintiffs have not presented any case law suggesting that such an arrangement necessarily violates the FLSA. There is simply insufficient evidence for this Court to find, as a matter of law, that Defendants arbitrarily withheld commissions.

## C. DID DEFENDANTS FAIL TO CREATE AND MAINTAIN RECORDS REQUIRED BY THE FLSA?

The FLSA requires every employer subject to its provisions to make and preserve "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c). More than half a century ago, the Supreme Court explained that when an employer fails to maintain accurate or adequate records,

> we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient <u>evidence to show the amount and extent of that work as a matter of just and reasonable inference</u>. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) *superseded by statute on other grounds*, 29 U.S.C. §§ 251-62, *as*

*described in Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 516-17 (2014) (emphasis added).

Plaintiffs point to the following exchange during Ms. Callaghan's deposition:

> Q. Okay. And an agreement such as how you are paid your commission, your straight time, your wages; that would be mutually beneficial, or at least somewhat beneficial to an employee, wouldn't it?
> A. Yes, sir.
> Q. Okay. But there is no such written agreement; is there?
> A. No, sir.

Rec. Doc. 146-5 at 6. Plaintiffs further argue that Defendants merely maintained client appointment schedules and did not track compensable hours worked during various activities, including, for example, meetings. Rec. Doc. 146-1 at 20-21. In support, Plaintiffs cite to a section of Ms. Callaghan's deposition testimony in which Plaintiffs' counsel asked "How do you keep track of stylist's hours if no one clocks in as a stylist?" Rec. Doc. 157-19 at 80. Ms. Callaghan answered that for stylists paid on a commission-only basis, hours are tracked with daily schedules. *Id.* at 81-82. To support their argument that certain compensable hours were not tracked at all, Plaintiffs cite to Ms. Callaghan's testimony that these stylists did not record hours for various meetings. *Id.* at 83-86.

It is undisputed that Defendants maintained some records, including daily schedules, task reports, and similar documents.

Plus, Ms. Callaghan stated in her affidavit that "a memorandum that provided guidelines concerning how to determine earned commissions" was available. Rec. Doc. 157-2 at 6. If these records are inaccurate or inadequate, then Plaintiffs may be able to satisfy their burden at trial by producing "sufficient evidence to show the amount and extent of [their] work as a matter of just and reasonable inference." *Mt. Clemens Pottery*, 328 U.S. at 687-88. However, at the summary judgment stage, there is insufficient evidence to show that, as a matter of law, Defendants consistently failed to maintain adequate records of hours and wages in violation of § 211(c).[10]

### D. DID DEFENDANTS WILLFULLY VIOLATE THE FLSA?

Under the FLSA, any action for unpaid minimum wages or overtime compensation must be commenced within two years after the cause of action accrued, "except that a cause of action arising out of a <u>willful</u> violation may be commenced within three years after the cause of action accrued . . . ." 29 U.S.C. § 255(a) (emphasis added). It is the plaintiff's burden to demonstrate willfulness. *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016) (citations omitted). "The standard for determining willfulness is whether the employer either knew or showed reckless

---

[10] If commissioned employees attended mandatory meetings and were not properly compensated for that time, Defendants violated the FLSA. However, the basis for H2O's commission payments is not currently available to the Court. Thus, as previously discussed, the Court will not grant summary judgment on this issue.

disregard for whether his conduct violated the FLSA." *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1036 (5th Cir. 1993) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). The Supreme Court and the Fifth Circuit have clarified that an employer's "unreasonable" or "negligent" actions are not necessarily "reckless." *McLaughlin*, 486 U.S. at 135 n.13; *Steele*, 826 F.3d at 248 (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)).

Plaintiffs argue that Defendants were aware of their obligations under the FLSA because they were investigated by the United States Department of Labor in 2006 (*see* Rec. Doc. 146-12, containing the 2006 audit materials) and received repeated complaints from their employees. Rec. Doc. 146-1 at 3, 22. In support, Plaintiffs cite to various communications from Mr. Gaspard to H2O employees in which he suggests that the Affordable Care Act imposed new burdens on the company. Rec. Doc. 146-10 at 1-2. For example, in a January 16, 2014 communication, Mr. and Ms. Gaspard explain that "[i]t is State and now Federal law for every employee to clock in and out. Due to Obamacare, the IRS is now holding us accountable for every employee to do so. They now require exact hours worked and your clock in and clock out records." Rec. Doc. 146-15. Plaintiffs also cite to Ms. Callaghan's testimony that

in 2006 when I spoke with the lady, and there was some
discrepancy with overtime at the time. When Michael John
and I had a meeting with her, she said – this is where
our confusion came in. That if they were receiving
commissions, we did not pay them overtime. They paid
straight time. We were not aware that it had to be 50
percent. So that is where our confusion happened. So
it's not the same thing because if you go back and look
at the records for some of your plaintiffs that did not
receive commission they were receiving overtime. So it
wasn't that we just weren't blatantly paying overtime to
anyone because they were. It was when the commission was
involved that our error was.

Rec. Doc. 157-19 at 86-87.

Ms. Callaghan states in her affidavit that the Department of

Labor

informed me that hair stylists, nail techs, and
estheticians that are paid on commissions were exempt
from overtime. I misunderstood the proper application of
that overtime exemption to hair stylists who were
compensated on both an hourly wage basis and commission
basis. I was not aware that the commission employee
exemption only applied to a mixed commission/hourly wage
employee if the commission compensation is more than
one-half of the employee's total compensation for a
period. As a result, I mistakenly applied the commission
employee exemption to mixed commission/hourly wage
compensated employees even if the commission component
of compensation was less than one-half of the employee's
total compensation for a period. I did not become aware
of this error until this lawsuit was filed. I did not
knowingly or willfully misapply the overtime exemption
– it was simply an inadvertent error.

Rec. Doc. 157-2 at 3-4.[11]

---

[11] Thus, Defendants admit to making an error as to overtime payments for
employees earning both an hourly wage and a commission. However, it is not clear
at this stage which Plaintiffs may have been affected by this error. Therefore,
summary judgment is inappropriate.

Based on both Ms. Callaghan's deposition testimony, in which she states that they were unaware of the applicable law, and affidavit, there is a genuine issue of material fact as to whether or not Defendants willfully violated the FLSA or simply acted negligently or unreasonably. Because it may be the latter, summary judgment is inappropriate.

**IV.** **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for partial summary judgment (Rec. Doc. 146) is **DENIED.**

New Orleans, Louisiana, this 8th day of June, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE