**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CARRIE BIGGIO, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-6034** |
| **H2O HAIR INC., ET AL.** | **SECTION "B"(2)** |

## ORDER AND REASONS

Before the Court is Defendants' "Motion for Partial Summary Judgment Seeking Dismissal of Plaintiffs' Retaliation Claims." Rec. Doc. 148. Plaintiffs filed a response. Rec. Doc. 159.[1] Defendants then requested (Rec. Doc. 162), and were granted (Rec. Doc. 168), leave to file a reply memorandum (Rec. Doc. 170). For the reasons discussed below,

**IT IS ORDERED** that Defendants' motion for partial summary judgment (Rec. Doc. 148) is **GRANTED**.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As this Court has previously discussed, on November 18, 2015, Plaintiffs Carrie Biggio and Chelsea Luminais (collectively "Plaintiffs"), filed the present action under the Fair Labor Standards Act ("FLSA") against their former employer, asserting claims individually and on behalf of all those similarly situated. Rec. Doc. 1 at 1-2. Plaintiffs worked full-time at Defendant H2O Hair, Inc. ("H2O") under numerous job titles, including, but not

---

[1] The instant motion was set for submission on May 24, 2017. Pursuant to Local Rule 7.5, Plaintiffs' response was therefore due no later than May 16, 2017. However, it was untimely filed on May 17, 2017. In the interest of justice, the Court will nevertheless consider it.

1

limited to: apprentice, stylist, masseuse, blow-dry bar attendant, receptionist, assistant, and housekeeper. *Id.* at 2. Named as Defendants in the action are H2O, Michael John Gaspard ("Mr. Gaspard"),[2] Holli M. Gaspard ("Ms. Gaspard"),[3] and XYZ Insurance Company.[4] *Id.; see also* Rec. Doc. 45 at ¶¶ 5-7. Soon after filing the complaint, Plaintiffs filed a motion to conditionally certify the class. Rec. Doc. 27. On March 14, 2016, the motion was granted in part to allow conditional certification. Rec. Doc. 44 at 15. The class now consists of thirteen former employees. Rec. Doc. 146-1 at 1.[5]

Plaintiffs asserted a number of claims against Defendants, including retaliation. Rec. Doc. 45 at 7, ¶¶ 26-29. Specifically, Plaintiffs alleged that their "pleas for overtime pay and their requests that the Gaspards and H2O comply with applicable law constituted protected conduct." *Id.* at ¶ 27. Defendants purportedly retaliated by restricting Plaintiffs' access to clients, constructively terminating employment, reducing wages without warning or justification, imposing duties outside the

---

[2] Mr. Gaspard served, at all relevant times, as H2O's manager, secretary, and treasurer. Rec. Doc. 1 at 2.
[3] Ms. Gaspard served, at all relevant times, as H2O's president. Rec. Doc. 1 at 2.
[4] XYZ Insurance Company is, upon Plaintiffs' information and belief, the unnamed insurer providing coverage to Defendants for acts or omissions of officers and directors. Rec. Doc. 1 at 2.
[5] Plaintiffs include Biggio, Luminais, Kaitlin Dubroca, Erin Hawkins, Amanda Henderson, Jeanette Kent, Heather Pham, Loan Tran, Diana Macera, Heather Whittington, Kayla Alvarez, Ashley Brown, and Alison Kennedy.

2

scope of Plaintiffs' employment, threatening termination, and demanding payment if an employee quit. *Id.* at ¶ 28.

## II. THE PARTIES' CONTENTIONS

Defendants argue that Plaintiffs cannot show that they engaged in a protected activity under 29 U.S.C. § 215(a)(3) or that Defendants retaliated against them for any such activity. Rec. Doc. 148-2 at 3. They note that they submitted an interrogatory to each Plaintiff seeking disclosure of the basis of Plaintiffs' retaliation claims. *Id.* at 4. When Plaintiffs failed to respond, Defendants moved to compel and Magistrate Judge Wilkinson granted the motion, ordering Plaintiffs to answer the interrogatory by May 23, 2017. Rec. Docs. 134, 144.[6] On May 30, 2017, Defendants filed a motion to hold Plaintiffs in contempt and for sanctions. Rec. Doc. 171. They argued that Plaintiffs Alvarez, Brown, and Kennedy failed to respond to the interrogatory and that the remaining Plaintiffs provided answers that raised objections, were not verified under oath, and were not full and complete. *Id.* at 2. The motion was referred to Magistrate Judge Wilkinson and set for submission on June 14, 2017. *Id.*[7]

Plaintiffs respond to the instant motion by arguing that the affidavits relied upon by Defendants are directly contradicted by

---

[6] Notably, Plaintiffs' response to the instant motion was due May 16, 2017, a week before Plaintiffs' interrogatory responses were due. Plaintiffs did not refer to their interrogatory responses in their response to the instant motion.
[7] In Plaintiffs' response to that motion, they admit that Plaintiffs Alvarez and Brown are no longer asserting retaliation claims. Rec. Doc. 174 at 2.

3

documentary evidence, deposition testimony, and Plaintiff declarations. Rec. Doc. 159 at 1.[8]

III. **LAW AND ANALYSIS**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). *See also TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant must then go beyond the pleadings and present other evidence to establish a

---

[8] Plaintiffs also note that Defendants have not filed an answer to their amended complaint. Rec. Doc. 159 at 2. However, the retaliation claim included in the amended complaint is exactly the same as the retaliation claim included in the original complaint. *See* Rec. Docs. 1 at 4, ¶¶ 17-20; 45 at 7, ¶¶ 26-29. Therefore, the Court will not address Defendants' failure to answer the amended complaint, presumably an oversight, in conjunction with the instant motion.

4

genuine issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

The FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). "An employee asserting retaliation under the FLSA may proceed in one of two ways: by direct or circumstantial evidence." *White v. Denton Cty.*, 655 F. App'x 1021, 1024 (5th Cir. 2016) (quoting *Monroe Firefighters Ass'n v. City of Monroe*, No. 06-1092, 2009 WL 772829, at *3 (W.D. La. Mar. 17, 2009)). "If a plaintiff does not have direct evidence of retaliation, then his claim is subject to the traditional burden-shifting framework of *McDonnell Douglas Corp. v. Green*." *Id.* (citing *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 577 (5th Cir. 2004)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S.

5

792 (1973). "To establish a *prima facie* claim of retaliation under the *McDonnell Douglas* burden-shifting framework, a plaintiff must demonstrate (1) participation in a protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *White*, 655 F. App'x at 1024 (citing *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008)); *see also Starnes v. Wallace*, 849 F.3d 627, 631-32 (5th Cir. 2017). As to the first element, a plaintiff engages in a protected activity if he or she makes a "complaint." *Starnes*, 849 F.3d at 632 (quoting *Hagan*, 529 F.3d at 626). To constitute a "complaint," the employee's communication must give the employer fair notice that he or she is "making a complaint that could subject the employer to a later claim of retaliation" and the "complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection." *Id.* (quoting *Lasater v. Tex. A & M Univ.-Commerce*, 495 F. App'x 458, 461 (5th Cir. 2012) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011))).

If a plaintiff makes a prima facie claim of retaliation, "the defendant must then articulate a legitimate, nondiscriminatory reason for its decision. The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination." *White*, 655 F. App'x at 1024 (citing *Hagan*, 529

6

F.3d at 624). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence . . . [meaning that] it is not the real reason for the adverse employment action." *Id.* at 1024-25 (internal quotation marks omitted) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

Here, Defendants argue that no Plaintiff "made a complaint concerning any violations of [the] FLSA by H2O" and that no Plaintiff was subject to an adverse employment action because of any such complaint. Rec. Doc. 148-2 at 4. To support these assertions, they provide affidavits by H2O's office manager, Cherie Callaghan, and general manager, Laura Phillips. *See* Rec. Docs. 148-4, 148-5.

In her affidavit, Ms. Callaghan explained that "[i]f an employee of H2O makes a complaint . . . concerning timekeeping/attendance, payroll, and compensation including but not limited to overtime and minimum wages to any representative of H2O, it is routed to [her] for handling." Rec. Doc. 148-4 at 1-2. She also stated that "[i]f any retaliatory or disciplinary action had been taken against any of the Plaintiffs arising out of, or related to, any complaints concerning overtime or minimum wages, I would, more likely than not, know about it." *Id.* at 2. She then stated that no Plaintiff complained, in writing or orally, about any unpaid earned overtime, minimum wages, or gap wages to H2O,

7

the United States Department of Labor, the Louisiana Department of Labor, or the Louisiana Workforce Commission. *Id.* at ¶¶ 29-35. She also stated that H2O did not retaliate against, terminate, demote, threaten to terminate or demote, reduce the pay or hours of, deny or reduce the benefits of, or subject, or threaten to subject, any Plaintiff to a hostile work environment or other detrimental personnel action because of any complaint pertaining to unpaid earned overtime, minimum wages, or gap wages or to inaccurate or incomplete work time records. *Id.* at ¶¶ 1-28.

In her affidavit, Ms. Phillips explained that she manages H2O's human resources activities and investigates employee complaints that are not routed to Ms. Callaghan. Rec. Doc. 148-5 at 1. She specifically stated that her "responsibilities include terminating or imposing any form of discipline on any employee of H2O." *Id.* at 2. She similarly stated that H2O did not retaliate against, terminate, demote, threaten to terminate or demote, reduce the hours of, deny or reduce the benefits of, or subject, or threaten to subject, any Plaintiff to a hostile work environment or detrimental personnel action because of any complaint pertaining to unpaid earned overtime or minimum wages or inaccurate or incomplete work time records. *Id.* at ¶¶ 1-23. Finally, she stated that she was never asked to take any retaliatory action against any Plaintiff because of any complaint regarding unpaid earned overtime or minimum wages. *Id.* at ¶¶ 24-25.

Thus, Defendants, who do not bear the burden of proving retaliation at trial, have provided competent summary judgment evidence that shows they are not subject to claims of retaliation. In response, Plaintiffs cite to various documents in the record in an attempt to demonstrate an issue of material fact warranting trial on this claim.

First, Mr. Gaspard testified during his deposition that he "heard there was some disgruntleness [sic]" among some employees, i.e. "there were a number of them disgruntled and starting to say, [w]e're going to quit,"[9] so he told them that "if there's anyone here that's unhappy . . . I will let you out of the . . . training agreement, and no one took me up on it." Rec. Doc. 159-2 at 1-2, 4. He testified that he gave the employees until the end of the week to take him up on this offer. *Id.* at 3. When Plaintiffs' counsel asked Mr. Gaspard if he remembered anyone complaining about a cost increase, Mr. Gaspard stated "No." *Id.* at 5-6.

This testimony does not establish that Plaintiffs engaged in a protected activity. Even though Mr. Gaspard admitted that some employees were disgruntled and threatening to quit, nowhere in his testimony does he state that Plaintiffs were complaining about

---

[9] In their response memorandum, Plaintiffs state that Mr. Gaspard "hosted a meeting with a number of 'disgruntled' employees who had discussed quitting over the treatment and pay at H2O." Rec. Doc. 159 at 4 (emphasis added). However, there is no evidence to show the basis for these employees' complaints; at most, Mr. Gaspard's deposition testimony recognizes that some of the employees were "disgruntled" and were thinking about quitting.

9

Defendants' alleged violations of, or Plaintiffs' rights under, the FLSA.

Mr. Gaspard nevertheless admitted that he was suing some people for breaching the training agreement. Rec. Doc. 159-2 at 3. "[T]hey know when they come to employ with us, and they sign that, that it is a legal and binding agreement." *Id.* at 5.

It appears from Plaintiffs' response memoranda to the instant motion, and the pending motion for sanctions, that Plaintiffs consider Defendants' lawsuits, and associated "threats" to sue, adverse employment actions.[10] However, Plaintiffs must also prove that these sanctions were causally connected to Plaintiffs' protected activities. Plaintiffs fail to make this argument in an organized or effective way; nonetheless, the Court will consider all of the evidence presented by Plaintiffs in response to the instant motion and attempt to find any evidence of a protected activity, a threat to sue, and a causal connection between these events. However, even if the Court finds such evidence, Mr. Gaspard's deposition testimony suggests that he sued or threatened to sue because certain employees breached their training agreements, not because they might have complained about Defendants' alleged FLSA violations. Thus, Plaintiffs would have

---

[10] For the purposes of this motion, the Court will assume that such activities constitute adverse employment actions.

to present evidence that this proffered explanation is unworthy of credence. The Court will attempt to find any such evidence.

When Plaintiffs' counsel asked Mr. Gaspard about why Plaintiff Tran left H2O, Mr. Gaspard testified that he believed she quit and that he did not recall her explaining why she quit or if there was any issue with how she was paid. Rec. Doc. 159-3 at 1. Plaintiffs produced screenshots of October 31, 2014 text messages from Mr. Gaspard to Plaintiff Tran in which Mr. Gaspard asked Plaintiff Tran to communicate with him, acknowledged that there was "confusion and how you were paid" and "it's obvious that your pay was not done correctly from what Sharee is [sic] told me but that's an easy fix." Rec. Doc. 159-4 at 1. When Plaintiff Tran failed to respond, he stated that he hopes Plaintiff Tran realizes "the unnecessary cost this is going to bring to you." *Id.* at 2. After he was shown these text messages during the deposition, Mr. Gaspard stated that he believed Plaintiff Tran was complaining about "not making enough or something." Rec. Doc. 159-3 at 2. He was unable to recall why he said her pay was done incorrectly. "I just remember that she . . . needs to be communicated with so that she understands if . . . it was a mistake we want to make it right." *Id.* at 3-4. He also explained that the "unnecessary cost" was his way of explaining that "she's not going to be able to enter into what's coming up next for her . . . if you can just stick it out until you learn this then you start growing at an exponential

11

rate." *Id.* at 4. Plaintiffs' counsel specifically asked if it was "possible you were referring to the cost of [a] lawsuit for her leaving?" *Id.* at 5. Mr. Gaspard responded "No. I don't threaten people." *Id.* Later, Mr. Gaspard states that "these people all quit. They weren't terminated." *Id.* at 9.

The text messages suggest that Plaintiff Tran complained about her pay to either Ms. Callaghan or Mr. Gaspard. The Court will assume that she made this complaint and thereby engaged in a protected activity. The only apparent adverse action is Mr. Gaspard's statement about the "unnecessary cost" that Plaintiff Tran may suffer. This could be construed as a threat to sue or terminate employment, and therefore an adverse employment action, but for the fact that Mr. Gaspard explicitly testified that he was not referring to a potential lawsuit or termination. Rather, he was referring to the opportunities that Plaintiff Tran would lose if she quit. Plus, even if the statement was considered a threat, Plaintiffs did not show that the statement was made in response to Plaintiff Tran's complaint. Instead, the text messages suggest that Mr. Gaspard was reacting to Plaintiff Tran's failure to respond and the possibility that she might quit. Again, the proffered evidence fails to establish a *prima facie* case of retaliation.

Plaintiffs' counsel then asked Mr. Gaspard about Plaintiff Kent and produced a screenshot of November 15, 2014 text messages

that Mr. Gaspard sent to Plaintiff Kent asking the latter to call him to explain "what's going on with you leaving today." Rec. Doc. 159-6. He then texted "I expect you to call me this is not going to go well with your agreement if you don't start explaining to me you're walking out[] I wouldn't think [a]s a Christian that you would want to be involved in a legal situation[] this is my last request." *Id.* During his deposition, Mr. Gaspard explained that this was not a threat, but that he "reminded her . . . of her agreement." Rec. Doc. 159-5 at 3. "[T]hey have an agreement with us and if you just walk out on it . . . you're going to owe money on this agreement. Are you prepared for that? I mean . . . you're going to owe us money cause you got all the education and you're leaving." *Id.* at 3-4.

Again, the text messages and accompanying deposition testimony evidencing Mr. Gaspard's threat to sue do not amount to evidence of an adverse employment action causally related to a protected activity. Mr. Gaspard made the statements in response to Plaintiff Kent "leaving" or "walking out." Whether that means Plaintiff Kent walked off the job, quit, or simply left for the day, none of these actions amount to a protected activity.

Plaintiffs also attached other documents to their response memorandum. For example, there is a handwritten letter from Plaintiff Kent stating "Can I please be off on Mondays and I can work Tues-Sat. I know we can't get overtime so maybe I can have a

13

short day during the week." Rec. Doc. 159-7 at 1. However, this document is not dated or addressed; nor is it verified by an affidavit or deposition testimony. Plaintiffs' counsel asked Ms. Callaghan about the document during her deposition, but she stated that she never recalled seeing it and that scheduling was handled by Ms. Phillips. Rec. Doc. 159-9 at 1. In their response memorandum, Plaintiffs argue that, by acknowledging that this complaint would have been handled by Ms. Phillips, Ms. Callaghan's deposition testimony contradicts her affidavit statement that complaints concerning "timekeeping/attendance, payroll, and compensation" are handled by her. Rec. Doc. 159 at 3-4.

The document, which is not competent summary judgment evidence (*see, e.g. Essel v. Purdy*, 112 F. App'x 326, 327 (5th Cir. 2004) ("unsworn documents are not competent summary judgment evidence") (citing Fed. R. Civ. P. 56(e); *Martin v. John W. Stone Oil Distr., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987))), does not amount to a protected activity. Plaintiff Kent did not appear to be complaining about Defendants' alleged FLSA violations, but simply requesting a schedule change. Even if it was a protected activity, Plaintiffs did not point to any adverse employment action.

Another document contains the handwritten notation "Dubroca Pers. File" at the top right corner and appears to contain handwritten notes. Rec. Doc. 159-8. When asked "Where do you feel

14

you need help from the leadership of H2O," the response appears to be "I feel like I need help with getting my clientel [sic] to come in the salon. I always have people wanting to come in but so hard for them to come in only when I am off." *Id.* In their response memorandum, Plaintiffs describe this document as "Dubroca Request to not work during off-time." Rec. Doc. 159 at 1-2. Again, Plaintiffs' counsel asked Ms. Callaghan about this document during her deposition, but Ms. Callaghan testified that she never recalled seeing it. Rec. Doc. 159-9 at 3.

This document is not competent summary judgment evidence. Nor does it amount to a protected activity. It is not clear that Plaintiff Dubroca was complaining about working off the clock. Rather, the statement could be interpreted to mean that she was not scheduled to work on days that prospective clients were available. Without more, the note cannot be construed as a complaint about Defendants' alleged FLSA violations. Plus, Plaintiffs do not point to any adverse employment action resulting from this supposed complaint.

The last document includes the names "Amanda," "Carrie," and "Kaitlin," a header titled "Reduction" and amounts totaling 52.70, 169.56, and 56.95, respectively, for a period ranging from October 25, 2013 to November 7, 2013. Rec. Doc. 159-12. This document is not verified in any way and therefore is not competent summary judgment evidence. Further, if Plaintiffs are trying to suggest

15

that these reductions were adverse employment actions, they fail to causally connect the reductions to any protected activity.

Finally, Plaintiffs cite to declarations by Plaintiffs Dubroca and Whittington. Both state that "[o]n numerous occasions the Defendants threatened me and other employees with high cost legal bills and being sued if we decided to quit." Rec. Docs. 159-10 at ¶ 6; 159-11 at ¶ 6.

This is insufficient. Plaintiffs do not suggest that these threats were made in response to a protected activity, but to their own threats to quit. Plus, Mr. Gaspard's testimony suggests that he made "threats" to sue only when employees breached or threatened to breach their training agreements, not when employees complained about possible FLSA violations. Plaintiffs have not presented any evidence to doubt this proffered explanation.

Plaintiffs Dubroca and Whittington further state that during December of 2013 Plaintiff Dubroca, in Plaintiff Whittington's presence, notified Defendants of "wage calculations and overtime wages owed to us." Rec. Docs. 159-10 at ¶ 7; 159-11 at ¶ 11. They were apparently told "that is not how our company works." *Id.* When Plaintiff Dubroca "asked for contact information for 'labor enforcement' to verify the Defendants pay practices," she "was given a random amount of money for that pay period." *Id.*

This is the first allegation of a complaint about FLSA violations that amounts to a protected activity. However,

Plaintiffs fail to connect this complaint to any adverse employment action.

**IV. CONCLUSION**

Because Plaintiffs failed to present evidence of a prima facie case of retaliation or an issue of material fact warranting trial,

**IT IS ORDERED** that Defendants' motion for partial summary judgment (Rec. Doc. 148) is **GRANTED** and that Plaintiffs' retaliation claims are **DISMISSED**.

New Orleans, Louisiana, this 8th day of June, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE